UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

| | | |
|---|---|---|
| ORYX SYSTEMS, INC., | ) | Case No. 26-30244 |
| | ) | Chapter 11 |
| | ) | |
| Debtor. | ) | |
| | ) | |

NOTICE OF HEARING

TAKE NOTICE that the debtor, **ORYX SYSTEMS, INC.** has filed a *Joint Motion For Approval Of Auction Marketing Agreement, To Sell Free And Clear Of Any Interests In Property, And Authorization To Surcharge Collateral.* A copy is included with this notice or copied on the reverse side of this notice.

**Your rights may be affected. You should read these papers carefully and discuss them with your attorney, if you have one in this bankruptcy case. If you do not have an attorney, you may wish to consult one.**

TAKE FURTHER NOTICE that a hearing on the motion will be held on **August 11, 2026 at 9:30 AM** at the U.S. Bankruptcy Court, Courtroom 2B, 401 W. Trade Street, Charlotte, NC 28202. Any response, including any objection, to the relief requested should be filed with the Clerk, United States Bankruptcy Court for the Western District of North Carolina, 401 W. Trade Street, Suite 2500, Charlotte, NC 28202. Any response should clearly identify the specific motion to which the response is directed and should comply with Local Rule 9013(1). A copy of any response should be served upon the following:

John C. Woodman, 1701 South Boulevard, Charlotte, NC 28203 (fax: 704-372-1357)

U.S. Bankruptcy Administrator, 401 W. Trade Street, Suite 2400, Charlotte, NC 28202 (fax: 704-344-6666)

TAKE FURTHER NOTICE that the Court may grant the relief requested at the hearing. No further notice will be given.

Dated: Charlotte, North Carolina
July 20, 2026.

*/s/ John C. Woodman*
John C. Woodman (NC Bar No. 42365)
1701 South Boulevard
Charlotte, North Carolina 28203
Tel: (704) 377-4300
Fax: (704) 372-1357
E-mail: jwoodman@essexrichards.com
*Counsel for the Debtor*

**UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF NORTH CAROLINA**
**CHARLOTTE DIVISION**

| | | |
|---|---|---|
| **ORYX SYSTEMS, INC.** | ) | **Case No. 26-30244** |
| | ) | **Chapter 11** |
| | ) | |
| **Debtor.** | ) | |
| | ) | |

## *JOINT* MOTION FOR APPROVAL OF AUCTION MARKETING AGREEMENT, TO SELL FREE AND CLEAR OF ANY INTERESTS IN PROPERTY, AND AUTHORIZATION TO SURCHARGE COLLATERAL

**NOW COMES** ORYX SYSTEMS, INC., the above-captioned debtor and debtor in possession (the "Debtor"), and 3056 Eaton Ave., LLC ("3056 Eaton"), and hereby request the Court enter an order, permitting the Debtor to liquidate certain assets via online public auction and authorizing the Debtor to surcharge the proceeds from the sale to pay administrative expenses incurred that made the sale possible, pursuant to section 105, 363, 506 of the Bankruptcy Code and Bankruptcy Rule 6004. In support of the relief requested, the Debtor states as follows:

### JURISDICTION

1. This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. Venue of this case and this Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). The statutory predicates for the relief requested herein are sections 105(a), 363(b), 363(f), 363(m) and 506 of Title 11 of the United States Code (the "Bankruptcy Code"), and Bankruptcy Rule 6004.

### BACKGROUND

2. The Debtor operated as a developer of high-precision thickness gauges, X-ray measurement systems, and slot-die coating technology based out of Monroe, North Carolina.

1

3.      The Debtor filed chapter 11 bankruptcy on February 27, 2026 (the "Petition Date"), before the United States Bankruptcy Court for the Western District of North Carolina ("Court"), to provide for value maximizing sales of the company assets located on property at 3056 Eaton Avenue, Indian Trail, NC 28097, which the Debtor leased from 3056 Eaton Ave., LLC ("3056 Eaton").

4.      The goal of the bankruptcy was to provide an orderly liquidation of the company assets with Court oversight of the same.  Prior to the bankruptcy, the Debtor received interest from one of its insiders to purchase certain equipment and assets.

5.      On April 21, 2026, 3056 Eaton filed a *Motion for Entry of an Order: (I) Compelling the Debtor to Immediately Pay All Outstanding Post-Petition Obligations Under Non-Residential Lease; and/or (II) for Relief from Stay* (the "Premises Motion") (Doc No. 21). A copy of the 3056 Eaton Lease Agreement (the "Lease") with the Debtor was attached as Exhibit A to the Premises Motion.

6.      With the agreement of the Debtor, the Court entered an *Order* (Doc No. 25) (the "Premises Order"), which was served on all creditors on May 14, 2026 (Doc No. 27), providing 3056 Eaton with relief from stay "to the extent necessary to allow 3056 Eaton to exercise any and all rights and remedies under applicable non-bankruptcy law and the Lease with respect to the Premises ... including, without limitation, the right to terminate the Lease and recover immediate possession of the Premises" provided that the Debtor was afforded thirty (30) days from the Order to remove its personal property from the Premises, after which time 3056 Eaton is authorized to dispose of or retain any remaining property. On June 15, 2026, the Court entered an Ex Parte *Order to Extend Deadline* (Doc No. 33) further extending the deadline for the Debtor to remove its personal property through July 15, 2026. No other parties objected to the Premises Motion or Premises Order.

7.      Following entry of the Premises Order, the Debtor continued negotiations with 3056 Eaton in the hope of generating the greatest recovery for the estate by obtaining the continued use of the leased premises for the ongoing storage of the Debtor's Assets to both protect the Assets and avoid relocation costs during a sale process.

*Assets and Auction*

8.      This Court has approved the retention of Iron Horse Auction Co., Inc. as its authorized auctioneer. *See* Ex Parte *Order Authorizing Employment of Iron Horse Auction Co, Inc. as Auctioneer* (Doc. No. 40). Attached as **Exhibit 1** is a copy of the Agreement, which is incorporated by reference as if fully set forth herein.

9.      The Assets that the Debtor seeks to sell pursuant to this Motion are listed on the *Asset Schedule* attached as **Exhibit 2** (the "Assets").

10.     With the agreement of 3056 Eaton, and at the suggestion of the Auctioneer hoping to maximize returns from the sale of the Debtor's Assets, various office furnishings belonging to 3056 Eaton (the "Eaton Assets"), which are not property of this bankruptcy estate, are also identified on Exhibit 2 and scheduled to be sold together with the Debtor's Assets via auction by Iron Horse.

11.     During the pendency of the case, the Debtor did receive an offer from an insider to purchase the Debtor's Okamoto Grinder 2860iQ (S/N20639). The amount was less than the purported lien amount, and the alleged senior lender, the United States Small Business Administration, rejected the offer.

12.     Consequently, the Debtor proposes to sell the Assets in the marketplace through an online auction and bidding process to ensure that the Debtor's estate realizes the maximum value for the Assets.

13.     Following the conclusion of any prevailing offer made during the online

auction, the Debtor seeks to be authorized and directed to take all commercially reasonable and necessary steps to complete and implement the transaction(s) contemplated by the sale, including (but not limited to) conveying the pertinent Asset to the party submitting the prevailing bid by bill of sale or other appropriate instrument. The Debtor shall be deemed to have accepted a bid only when the bill of sale or other appropriate instrument is delivered.

14.     Upon completion of the auction process, the Debtor will file the required Report of Sale as to all assets sold. Thereafter, within thirty (30) days of the Report of Sale being filed, the Debtor will file a Motion for Status Conference to update the Court as to the sale results.

***Auction Fees and Costs***

15.     In exchange for conducting the online auction, Iron Horse Auction Co., Inc. ("Iron Horse") has agreed to charge no more than $3,000 in marketing fees and be compensated by charging a tiered commission structure and a Buyer's premium charged to the prevailing buyer of the asset sold. The fees charged in this matter are consistent with Iron Horse's other engagements of this size in this District.

16.     Through this Motion, on the fee structure provided for in the Agreement and outlined above, the Debtor seeks to compensate Iron Horse Auction without further application of the Court.

***Payment and Return of Restored Premises to 3056 Eaton***

17.     Pursuant to the Lease, the Debtor was required to pay 3056 Eaton monthly base rent of $14,094.37 on the first of each month, together with utility payments and additional rent payments that included payments for property taxes. The Debtor has made no payments to 3056 Eaton during this bankruptcy case, and 3056 Eaton maintains that it is entitled to an administrative claim of more than $80,000, which amount continues to increase while the Debtor's property remains on the premises.

4

18.    Notwithstanding its entitlement to dispose of the Assets, 3056 Eaton is willing to permit the Debtor to continue to store the Assets on the premises during the sale process and to resolve any administrative claim that 3056 Eaton may assert in this case in exchange for (i) payment in the discounted amount of $50,000 (the "Eaton Payment") from the auction proceeds, paid first from any proceeds from the Eaton Assets and second from the proceeds from the Debtor's Assets pursuant to a surcharge; (ii) the removal of all of the Debtor's assets from the premises with the premises returned in broom-swept condition no later than August 14, 2026; and (iii) the removal of the wall as necessary to facilitate the removal of the Debtor's Okamoto Grinder 2860iQ (S/N 20639) and restoration of the wall to its current condition by August 14, 2026 provided however, the Debtor may seek an order extending the August 14, 2026 removal period for cause.

***Secured Claims***

19.    Without waiver to challenging any such interest in the collateral or the perfection of any liens at a later date, below is a schedule of the UCC Financing Statements on file with the North Carolina Secretary of State in which the Debtor is listed:

| CREDITOR | UCC NUMBER | DATE FILED |
|---|---|---|
| Yadkin Bank[1] | 20160127562C | Dec. 27, 2016 |
| Small Business Administration | 20200066055H | May 30, 2020 |
| ENGS Commercial Finance Co. | 20230033401K | March 14, 2023 |
| TD Bank, N.A. | 20240081902K | July 3, 2024 |

(collectively, the "UCC-1 Creditors").

---

[1] Yadkin Bank was scheduled as $0.00 as the Debtor does not believe it has any financial obligation owed to the same. Yadkin has not filed a proof of claim in this case.

5

20.     None of the UCC-1 Creditors appeared at the hearing on the Premises Motion or objected to the Premises Order.

21.     For purposes of this Motion, the Debtor seeks an Order providing that any valid liens that existed as of the Petition Date attach, with the same priority, to the proceeds of any completed sale thereby giving the Creditors replacement liens on the Assets to the extent that a lien existed, provided however, that a surcharge apply to the proceeds to the extent necessary to satisfy the fees and costs in preserving the assets, including any administrative expenses, professional fees, the Eaton Payment, and restoring and cleaning the Eaton premises.

## RELIEF REQUESTED

Pursuant to this Motion, the Debtor requests the following relief: (i) authorization to sell the Assets pursuant to the Auction Marketing Agreement free and clear of liens, claims, interests, and encumbrances with any liens, claims, interests, and encumbrances attaching to the net proceeds of the sale to the same extent and priority as the same existed on the Petition Date; (ii) that any party submitting the prevailing bid on a particular Asset be afforded the protections of section 363(m) of the Bankruptcy Code; (iii) that the Court waive any stay that would otherwise apply pursuant to Bankruptcy Rule 6004(h), and (iv) that the Court approve the surcharge of the sale proceeds for the Debtor's fees and costs for the sale of the Assets, including the Eaton Payment, and restoring and cleaning the Eaton premises.

## BASIS FOR RELIEF REQUESTED

22.     The Debtor, in its sound business judgment, asserts that liquidating the Assets pursuant to the Auction Marketing Agreement will yield the highest net return to the bankruptcy estate.

23.     Section 363(f)(2) of the Bankruptcy Code permits the sale of estate property free and clear of any interest in such property by consent of the party claiming an interest in the

6

property.

24.    "In determining whether to approve a proposed sale under section 363, courts generally apply standards that, although stated various ways, represent essentially a business judgment test." 3 COLLIER ON BANKRUPTCY ¶ 363.02 (16th 2019).

25.    Courts look to various factors to determine whether a sound business justification exists, including: (a) whether a sound business reason exists for the proposed transaction; (b) whether fair and reasonable consideration is provided; (c) whether the transaction has been proposed and negotiated in good faith; and (d) whether adequate and reasonable notice is provided. *Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1071 (2d Cir. 1983) (setting forth the "sound business purpose" test); *accord In re Abbots Dairies of Pa., Inc.*, 788 F.2d 143, 145-47 (3d Cir. 1986) (implicitly adopting the articulated business justification test of *In re Lionel Corp.* standard and adding the "good faith" requirement); *In re Charlotte Commercial Group, Inc.*, 2002 WL 31055241, *3 (Bankr. M.D.N.C. Aug. 12, 2002) (unreported decision by Judge Aron adopting *Lionel* in the Middle District of North Carolina).

26.    Here, sound business justification exists as to the sale of the Assets as the Debtor seeks a commercially reasonable sale with competing liens and interests over the Assets.

27.    Moreover, sound business reason exists for the proposed sale in that selling the Assets ensures the greatest return for the estate especially given the unique nature of the Assets. The sale may result in the ability to provide some recovery to unsecured creditors due to the uniqueness of the Assets whereas compared to the alternative, creditors may be left with nothing.

28.    The public auction of the Assets will ensure that the sale will be conducted in a fair, open, and competitive manner, and on a level playing field. Any resulting transactions are in good faith and at arm's length. Accordingly, any party submitting the prevailing bid on a

7

particular Asset should be considered to have acted in good faith and is entitled to the protections of section 363(m) of the Bankruptcy Code.

29. The Debtor asserts that section 363(f)(4) is satisfied such that the Assets may be sold free and clear of the alleged liens of the Creditors with any liens of the same attaching to the proceeds of the sale to the extent that any such lien still exists and has not been waived by the non-action of the Premises Motion and Premises Order.

30. Waiver of the stay provided for under Bankruptcy Rule 6004(h) is also warranted so that this beneficial sale may proceed as quickly as possible thereby reducing administrative costs.

31. Under section 506(c) of the Bankruptcy Code, a debtor-in-possession "may recover from property securing an allowed claim the reasonable, necessary costs and expenses of preserving, or disposing of, such property to the extent of any benefit to the holder of such claim." A movant seeking surcharge under section 506(c) must show: (i) the expenditure was necessary; (ii) the amounts expended were reasonable; and (3) the expenditure conferred a direct benefit on the secured creditor. *See In re K & L Lakeland, Inc.*, 128 F.3d 203, 213 (4th Cir. 1997) (citing *In re Visual Indus.*, 929 F.2d 203, 205 (5th Cir. 1991).

32. The prime purpose of section 506(c) is "to prevent a secured creditor from gaining a windfall at the expense of the estate." *Loudoun Leasing Development Co. v. Ford Motor Credit Co. (in re K & L Lakeland, Inc.)*, 128 F.3d 203 (4th Cir. 1997) *(internal citations omitted)*.

33. The fees incurred by this estate, including the costs associated with the Auction and the Eaton Payment, should be surcharged under section 506(c), as necessary and reasonable for both the preservation and disposition of the Assets, which 3056 Eaton would be entitled to dispose of under the Premises Order, and with the alternative of no sale resulting in no recovery

8

for any secured creditors.

34.     Lastly, due to the proposed sale, the Debtor seeks an extension of time up through and including August 14, 2026 to remove the Assets from the commercial premises to allow for completion of the auction sale provided however, the Debtor may seek an order extending the August 14 removal period for cause.

35.     The Debtor submits that this request is made in good faith and not for the purposes of delay.

36.     This Motion is submitted without prejudice to, and with a full and express reservation of, the movants' rights, including the right to supplement or amend this Motion.

**WHEREFORE**, the Debtor and 3056 Eaton request that this Court issue an order: (i) granting authorization to sell the Assets pursuant to the Auction Marketing Agreement free and clear of liens, claims, interests, and encumbrances with any liens, claims, interests, and encumbrances attaching to the net proceeds of the sale to the same extent and priority as the same existed on the Petition Date; (ii) providing that any party submitting the prevailing bid on a particular Asset be afforded the protections of section 363(m) of the Bankruptcy Code; (iii) waiving any stay that would otherwise apply pursuant to Bankruptcy Rule 6004(h); (iv) requiring the removal of any Assets from 3056 Eaton's property and the restoration of the premises no later than August 14, 2026, unless otherwise agreed; (v) approving the surcharge of sale proceeds sufficient to satisfy the Eaton Payment and all fees and costs incurred in the Auction; and (vi) granting such other and further relief as the Court deems just and proper.

This the 20th day of July, 2026.

**ESSEX RICHARDS, P.A.**

*/s/ John C. Woodman*
John C. Woodman (NC Bar No. 42365)
1701 South Boulevard
Charlotte, North Carolina 28203

Tel: (704) 377-4300
Fax:  (704) 372-1357
E-mail: jwoodman@essexrichards.com

**-and-**

*/s/ Ronald Bruckmann*
Ronald D.P. Bruckmann (NC Bar # 53693)
**SHUMAKER, LOOP & KENDRICK, LLP**
101 S. Tryon Street, Suite 2200
Charlotte, NC  28280
Telephone:  704.375.0057
rbruckmann@shumaker.com

*Attorneys for 3056 Eaton Ave., LLC*

10

# EXHIBIT "1"

STATE OF NORTH CAROLINA

COUNTY OF UNION

### AUCTION MARKETING AGREEMENT

THIS AGREEMENT is made effective this 25th day of June 2026, by and between ORYX SYSTEMS, INC. AS DEBTOR IN POSSESSION (the "Seller") in Case # 26-30244 in the United States Bankruptcy Court, Western District of North Carolina; and IRON HORSE AUCTION CO., INC., Professional Auctioneers and Real Estate Brokers of Rockingham, North Carolina, hereinafter called ("Auctioneers"). All the above-identified parties may be collectively referred to herein as the ("Parties").

### WITNESSETH

That for and in consideration of FIFTEEN PERCENT (15%) commission on items bringing $0.00-$5,000.00; TEN PERCENT (10%) commission on items bringing $5,000.01-$10,000.00; FIVE PERCENT (5%) commission on items bringing $10,000.01-$25,000.00; ZERO PERCENT (0%) commission on items bringing $25,000.01 or higher and the Buyer's Premium and other fees or reimbursements as described below, the Parties hereby covenant and agree as follows:

1. That the Auctioneers shall supply a sufficient amount of personnel deemed necessary to properly perform online auctions for the Seller. Personnel will be provided for asset categorization, catalog creation, item photography, cashiers, inspection periods and item removal periods for the following personal property:

PERSONAL PROPERTY: Okamoto Grinder with attachments and the remaining items assets including but not limited to items identified on Exhibit A of this Agreement and located at 3056 Eaton Avenue, Indian Trail, NC.

2. The auction or auctions of the property described in this agreement shall be held online using an Internet Service Provider chosen by the Auctioneers. It shall be in the discretion of the Auctioneers of when to begin, when to end, and how to structure the auction or auctions. Provided, however, that all auctions under this agreement must conclude and all items removed from their current location by August 31, 2026.

3. The auction or auctions described in this agreement shall be subject to extended bidding. Extended bidding means that if there is a bid placed in the last 5 minutes on an individual lot, the auction for that lot will reset for 5 minutes. This will continue until there is a 5-minute period without a bid being placed in the auction. Staggered ending means we will stagger the end times so that ten lots will begin closing every three minutes at the auction ending. Further, the Auctioneers reserve the right to reduce the end time as necessary to administer the auction in the best interest to the Parties and to obtain the maximum value of the auction items.

Seller Initials _____1 of 4Auctioneers Initials _____

4.       That all advertising, promotion, and advertising layout will be conducted by AUCTION PROMOTIONS UNLIMITED, the in-house advertising agency of IRON HORSE AUCTION CO., INC. The advertising budget should not exceed $4,000.00, which is an expense of the Seller and can be paid from the auction proceeds. A certified accounting of all ads placed shall be provided to the Seller at the closing.

5.       That the Seller is to maintain the property and preserve it in saleable condition through the period of sale.  The Seller is to allow the Auctioneers reasonable access to the property for purposes of inspection and to coordinate and conduct the auction and removal of the property upon sale.

6.       That the Auctioneers shall be responsible only for the payment of the services of other Auctioneers, bid assistants, clerks, cashiers, and other persons hired by the Auctioneers to perform said auction.  This includes travel to facilitate turnover of machinery that is property of the estate if needed.

7.       That the Auctioneers hereby agree to use their professional skill, knowledge, and experience to the best advantage of all Parties in preparing for and in the execution of the auction.  That the Auctioneers' fee for conducting said auction has been earned upon compliance with the bid on the subject property that has been sold to the last and highest bidder.

8.       That no item shall be sold or withdrawn from the sale prior to the auction except by mutual agreement between the Parties.

9.       That it is agreed the property shall be sold to the highest bidder either individually, in any combination, or as a whole, at the discretion of the Auctioneers. That all bids will be final, and no raise of bid period will be allowed after the conclusion of the online auction.

10.      That the property is sold "AS IS, WHERE IS" with all faults and without warranty of any kind.  The Seller agrees to hold harmless the Auctioneers against any claims of any nature. The Auctioneers shall be the Agent of the Seller only and at no time during the transaction shall represent anyone other than the Seller.

11.      That Seller shall be responsible for its cost of the sale, which is: commission, advertising and relocation expenses as incurred with receipts.

12.      That to the extent allowable under applicable law, the Auctioneers' commission and right to reimbursement for costs advanced are a lien on the property herein involved and may be enforced as though it were a statutory lien.

13.      That the Seller covenants that they have good title or will have the right to sell the property subject to this agreement upon entry of an order approving this agreement by the United States Bankruptcy Court, Western District of North Carolina.  The Seller further acknowledges that the property shall be sold free and clear of all liens and encumbrances.

14.      That should there be lien holders, whether individuals or institutions, the Auctioneers have the permission to communicate with said lien holders.  This

Seller Initials _____            2 of 4            Auctioneers Initials _____

communication is in purpose intended for the best and common interest of all parties concerned. Additionally, any and all liens shall be paid at time of settlement with the Seller or shall attach to the proceeds of the sale.

15.      That the Parties acknowledge the auction method is unsure and that while many items may sell for higher prices than expected, others may sell for a lesser price.

16.      That the Auctioneers shall have the right to charge a Buyer's Premium of FIFTEEN PERCENT (15%) on all personal property purchases, which shall be the property of the Auctioneers.

17.      That the technology we will use to broadcast the property over the internet has the opportunity from time to time to have technological challenges and difficulties, of which we have no control; therefore, we as agents and principals are not liable for any technical deficiencies that may arrive throughout the marketing and sales implementation of this asset using the internet. That the Auctioneers reserve the right to extend the auction closing times if there is an interruption of technology services.

18.      That the Auctioneers shall deliver to the Seller an unaudited sale report within seven days upon the completion of the auction. The Auctioneers shall deliver the full auction settlement report to the Seller within 30 business days after the auction. Disbursement of net proceeds of sale shall be to the Seller or its assigns and occur upon receipt of the executed auction settlement report.

19.      That this document is subject to the approval of the United States Bankruptcy Court, Western District of North Carolina and shall be interpreted in accordance with the laws of the State of North Carolina and the United States Bankruptcy Code. The United States Bankruptcy Court, Western District of North Carolina, shall hear any and all cause of action that may arise from this agreement.

20.      That the Auctioneers carry an Umbrella Insurance Policy in the amount of $3,000,000.00 to cover any loss and/or liability associated with our auction services. In addition to insurance, Auctioneers maintain a valid bankruptcy bond for the United States Bankruptcy Court, Western District of North Carolina.

REMAINDER OF PAGE INTENTIONALLY BLANK – SIGNATURE PAGE TO FOLLOW

IN TESTIMONY WHEREOF, the Parties have caused this Auction Marketing Agreement to be signed the day and year first above written.


WITNESS:                                            ORYX SYSTEMS, INC.

                                                    BY: _____(SEAL)
                                                    LARRY BIGDA, OFFICER


                                                    IRON HORSE AUCTION CO., INC.:

                                                    BY: _____(SEAL)
                                                    WILLIAM B. LILLY, JR., PRESIDENT

# EXHIBIT "2"

**Exhibit 2**

Okomoato Grinder 2860iQ (S/N 20639)

| Category | Cordinate Measurement Machine |
|---|---|
| Part 8 - Machinery | Floor-mounted motorized jib crane (2500 lb capacity) |
| Part 8 - Machinery | Yale natural gas forklift (approx 5000-6000 lb capacity, 20-25 years old) |
| Part 8 - Machinery | Industrial air compressor (mid-size horizontal tank) |
| Part 8 - Machinery | Granite surface plate 6 ft x 3 ft (modified) |
| Part 8 - Machinery | Granite surface plate 6 ft x 3 ft on stand |
| Part 8 - Machinery | Floor-standing shear (old) |
| Part 8 - Machinery | Floor-standing band saw (old) |
| Part 8 - Machinery | SurfTest SJ-220 roughness tester |
| Part 8 - Machinery | Oryx Custom Flatness Gauge (prototype unit) with laptop |
| Part 8 - Machinery | HOPE Industrial 22-inch resistive touchscreen (stainless, with yoke and pedestal) |
| Part 8 - Machinery | HOPE Industrial 22-inch resistive touchscreen (carbon black) |
| Part 8 - Machinery | HOPE Industrial 22-inch resistive touchscreen (carbon black) |
| Part 8 - Machinery | HP 54602 Oscilloscope (vintage) |
| Part 8 - Machinery | LW Scientific Microscope (older model) |
| Part 8 - Machinery | Rolling tool chest - Red (powder-coated, drawer unit) |
| Part 8 - Machinery | Rolling tool chest - Green (powder-coated, drawer unit) |
| Part 8 - Machinery | Large freestanding toolbox (floor unit) |
| Part 8 - Machinery | Assorted hand tools (bulk lot) |
| Part 8 - Machinery | Assorted small power tools and clamps (bulk lot) |
| Part 8 - Machinery | Manual pallet strapping system |
| Part 8 - Machinery | Pallet jack (2 units) |
| Part 8 - Machinery | Manual lift table (pallet jack style with platform) |
| Part 8 - Machinery | Old belt sanders (2 units) |
| Part 8 - Machinery | HP LaserJet M23C office printer |
| Part 8 - Machinery | Creality 3D printer |
| Part 8 - Machinery | precision balance (1 microgram resolution) |
| Part 8 - Machinery | Assorted vintage electronic test equipment (1970s-1980s) |
| Part 8 - Machinery | Hand grinder (1 unit) |
| Part 8 - Machinery | Power saw (miter/table saw style, 1 unit) |
| Part 8 - Machinery | Jigsaw (1 unit) |
| Part 8 - Machinery | Flameproof cabinet for chemicals |
| Part 8 - Machinery | Compunex Winertia idler rolls (4 units, 100mm OD x 500mm length, black anodized) |
| Part 8 - Machinery | Macron Dynamics belt drive (1000Nm) |
| Part 8 - Machinery | Storage Racks (6) |
| | |
| Part 5 - Inventory | NB Linear Rails (16 x 3m, new condition) |
| Part 5 - Inventory | Metric fasteners in Fastenal rack (likely consignment) |
| Part 5 - Inventory | Reechi Industrial X-Ray (fully operational) |

| | |
|---|---|
| Part 5 - Inventory | Custom Demo Slot Die (battery electrode coating) |
| Part 5 - Inventory | Miscellaneous industrial electronics (approx 40 partially full bus tubs) |
| Part 5 - Inventory | Industrial PCs (IPC) POC-200 or 210; passwords unknown |
| | |
| Part 7 - Office Equipment | Assorted Dell monitors (approx 12 units, 24-26 inch, 3-5 years old) |
| Part 7 - Office Equipment | Box of used mechanical keyboards |
| Part 7 - Office Equipment | Dell tower computers (approx 10 units, older, password status uncertain) |
| Part 7 - Office Equipment | HP DesignJet T230 Plotter |
| Part 7 - Office Equipment | Brother MFC-L2717DW Printer |
| Part 7 - Office Equipment | K-sun Label Maker |
| Part 7 - Office Equipment | Basic workbenches (2) |
| Part 7 - Office Equipment | LANDLORD OWNED: All desks, chairs, conf room/break table conf TV corner office TV |